

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*86 Chambers Street*
*New York, New York 10007*

March 16, 2018

BY ECF
The Honorable Ronnie Abrams
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square, Room 2203
New York, NY 10007

      Re:    *Nat'l Immigration Project v. U.S. Dep't of Homeland*, No. 18 Civ. 659 (RA)

Dear Judge Abrams:

      I write respectfully on behalf of Defendants the Department of Homeland Security ("DHS"), U.S. Citizenship and Immigration Service ("CIS"), the Department of State ("DOS"), and U.S. Immigration and Customs Enforcement ("ICE") to request that the Court set a schedule for rolling productions in response to Plaintiffs' Freedom of Information Act ("FOIA") requests that requires each Defendant to process 300 to 500 pages per month. District courts have adopted a similar schedule in no fewer than ten cases, and it reflects a fair and reasonable interpretation of FOIA's requirements. The schedule Plaintiffs proposed at the March 9, 2018, conference—2,000 pages *per week*—is not practicable. To the contrary, it would require DHS to process more pages per month in this case than in all of its other FOIA litigations combined, during a period that commentators have described as a crisis because of a surge in FOIA litigation.

      **Background Information**

      In fiscal year ("FY") 2017, courts experienced an "unprecedented increase" in the number of FOIA lawsuits, which rose "an astonishing 26 percent" compared to FY 2016, creating a "real crisis." *See* The FOIA Project, *FOIA Lawsuits Surge in Trump Administration's First Year* (Jan. 16, 2018), at http://foiaproject.org/2018/01/16/lawsuits-trump-first-year/. The number of new FOIA suits against DHS increased by 46%, from 67 in FY 2016 to 98 in FY 2017. *Id.* While the number of FOIA suits against State did not increase in FY 2017 relative to FY 2016, that is only because it had already experienced a "dramatic . . . increase" in requests beginning in FY 2015, as a result of the presidential election. *Daily Caller v. U.S. Dep't of State*, 152 F. Supp. 3d 1, 12 (D.D.C. 2015).

      The surge in FOIA litigation has affected each Defendant. DHS's Privacy Office ("DHS Privacy"), which processes FOIA requests for twelve headquarters-level offices, has experienced a 100% increase in FOIA requests since FY 2016 and a 65% increase in FOIA litigations. Decl. of James V.M.L. Holzer dated March 14, 2018 ("Holzer Decl.") ¶¶ 7, 11, 12. DHS Privacy has only

five FOIA specialists to handle all aspects of the FOIA process. *Id.* ¶ 10. It also has three vacancies for FOIA specialists. *Id.* ¶ 9. DHS Privacy currently oversees 50 lawsuits. *Id.* ¶ 12. In the other cases where it actively processes documents, it reviews 5,500 pages per month, an average of less than 400 pages per case per month. *Id.* Plaintiffs' proposed schedule would require DHS Privacy to process thousands more pages per month in this case than DHS currently processes in all of those other cases. *Id.* ¶¶ 12, 17. To attempt to comply with Plaintiffs' proposed schedule, DHS Privacy would need to divert nearly all of its personnel from other pending FOIA requests. *Id.* ¶ 20. Similarly, CIS experienced a 12.6% increase in FOIA requests in FY 2017, receiving a total of 190,941. Decl. of Jill A. Eggleston dated March 16, 2018 ("Eggleston Decl.") ¶ 7. While CIS has 208 FOIA employees, only 6 work in the Significant Interests Group ("SIG"), which handles requests like Plaintiffs'. *Id.* ¶¶ 9–10. CIS has 42 FOIA vacancies, and two vacancies in SIG. *Id.* ¶¶ 10–11. Each SIG processor is currently handling approximately 100 requests designated as complex. *Id.* ¶ 10. CIS has 40 active FOIA litigations, and is under processing schedules in 5. *Id.* ¶ 12. Finally, State is a defendant in 119 FOIA litigations, more than a 100% increase since 2014. Decl. of Eric F. Stein dated March 16, 2018 ("Stein Decl.") ¶ 17. Court orders in 15 of those litigations require State to process approximately 8,300 pages per month, or 553 pages per case per month. *Id.* ¶ 20. In the last pay period, State had 63 reviewers for litigation, five fewer than it averaged in FY 2017. *Id.* ¶ 22. State also has 8 unfilled positions on the litigation team that supports the reviewers. *Id.* If the Court entered Plaintiffs' proposed schedule, State estimates that it would need to devote approximately 40% of its current FOIA litigation staff to this case alone. *Id.* ¶ 23.[1]

### A. Plaintiffs Do Not Qualify for Expedited Processing under § 552(a)(6)(E)(i)

Plaintiffs' submissions have not addressed the legal standard for expedited processing under FOIA, and they fail to meet either requirement for such processing.[2] "[U]nder FOIA, plaintiffs are entitled to expedited processing of their requests only if they demonstrate a 'compelling need' for expedition." *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001) (citing 5 U.S.C. § 552(a)(6)(E)(i)(I)); *see also* 6 C.F.R. § 5.5(e); 22 C.F.R. § 171.11(f). In the absence of an "imminent threat to the life or physical safety of an individual," a plaintiff must meet two criteria to show a "compelling need": (1) the plaintiff must be "primarily engaged in disseminating information"; and (2) the plaintiff must show "urgency to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v). Congress intended for these criteria to be "narrowly applied." *Al-Fayed*, 254 F.3d at 310 (quoting H.R. Rep. No. 104-795, at 26 (1996)). An "unduly generous approach" to expedited processing would "disadvantage those requestors who do qualify for expedition, because prioritizing all requests would effectively prioritize none." *Id.* Even when an agency fails to "respond in a timely manner" to a request for expedited processing, "judicial review shall be based on the record before the agency." 5 U.S.C. § 552(a)(6)(E)(iii).

---

[1] Because ICE has identified only 1,100 pages of potentially responsive documents for processing, this letter brief will not focus on ICE.

[2] The only support Plaintiffs have identified for their proposed deadlines is the 20-day administrative deadline imposed by 5 U.S.C. § 552(a)(6)(A)(i). But the D.C. Circuit has acknowledged that "it would be a practical impossibility for agencies to process all FOIA requests completely within twenty days." *Citizens for Responsibility & Ethics in Wash. v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013) (quotation marks and brackets omitted). If an agency does not meet the 20-day administrative deadline, the only "'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.*

Plaintiffs do not satisfy either criterion for expedited processing. First, they are not "primarily engaged in disseminating information." 5 U.S.C. § 552(a)(6)(E)(v)(II). "The standard of 'primarily engaged' requires that information dissemination be the *main activity* of the requestor, although it need not be their sole occupation." *Landmark Legal Found. v. EPA*, 910 F. Supp. 2d 270, 276 (D.D.C. 2012) (emphasis retained). According to their FOIA requests, Plaintiffs are "an organization that works on behalf of immigrant communities and a law school clinical professor." Dkt. No. 30-1 at 2; Dkt. No. 30-4 at 4. Courts have frequently found that similar requesters do not qualify as "primarily engaged in disseminating information," even if the requesters intend to disseminate the information they obtain. *See Nat'l Day Laborer Org. Network v. ICE*, 236 F. Supp. 3d 810, 817 (S.D.N.Y. 2017) (rejecting organizing network that "maintain[s] websites that receive many hits" and would "widely publish and disseminate [the requested] information"); *Landmark*, 910 F. Supp. 2d at 276; *ACLU of N. Cal. v. Dep't of Justice*, No. 04 Civ. 4447 (PJH), 2005 WL 588354, at *14 (N.D. Cal. Mar. 11, 2005) (finding that, although ACLU of N. Cal. "engages in substantial dissemination of information," "there is no showing that it is *the* main activity" (emphasis retained)).

Second, Plaintiffs cannot show the necessary "urgency to inform the public." 5 U.S.C. § 552(a)(6)(E)(v)(II). "Urgency to inform" depends on three factors: (1) whether the request concerns "a matter of current exigency to the American public"; (2) whether delay would "compromise a significant recognized interest"; and (3) whether the request relates to "federal government activity." *Al-Fayed*, 254 F.3d at 310. "The public's right to know, although a significant and important value, would not by itself be sufficient to satisfy this standard." *Al-Fayed*, 254 F.3d at 310 (quoting H.R. Rep. No. 104-795, at 26). Instead, "only public interest in the specific subject of a FOIA request is sufficient to weigh in favor of expedited treatment." *Elec. Privacy Info. Ctr. ("EPIC") v. Dep't of Def.*, 355 F. Supp. 2d 98, 102 (D.D.C. 2004). Moreover, a plaintiff must further identify "an imminent action indicating that the requested information will not retain its value if procured through the normal FOIA channels." *See Long v. DHS*, 436 F. Supp. 2d 38, 43 (D.D.C. 2006) (internal quotation marks omitted)). Here, Plaintiffs' FOIA requests assert only that the "records sought will help the general public understand the basis and the standards used for the government's decision to terminate TPS," therefore "benefit[ting] public discourse." Dkt. No. 30-4 at 6; Dkt. No. 30-1 at 4. Such an interest neither focuses on "an imminent action," *Long*, 436 F. Supp. 2d at 43, nor differs from the "public's right to know," which does not satisfy the standard, *Al-Fayed*, 254 F.3d at 310. At the March 9th conference, Plaintiffs argued that the requested information will affect "active legislative proposals" and help Haitian beneficiaries of Temporary Protected Status ("TPS") make "basic plans for their future." Tr. at 16. These arguments fail for two reasons. First, Plaintiffs do not base these arguments on "the record before the agency," and they thus fall outside the scope of the Court's review. 5 U.S.C. § 552(a)(6)(E)(iii). Second, "the specific subject" of Plaintiffs' requests—recommendations and communications by "any employee" of Defendants—is not likely to have any relevance to legislative proposals or decision-making by Haitian beneficiaries of TPS. *EPIC*, 355 F. Supp. 2d at 101.

### B. Plaintiffs' Proposed Schedule Is Not Practicable

Even if Plaintiffs were entitled to expedited processing under FOIA, the Court should not impose the schedule they requested during the March 9th conference, which would require rolling productions of 2,000 pages *per week*. FOIA provides that agencies will "process" expedited

requests "as soon as practicable." 5 U.S.C. § 552(a)(6)(E)(iii). When considering whether a proposed schedule is "practicable," courts examine whether an agency has presented "credible evidence" regarding such considerations as the number of "expedited FOIA requests the agency is already processing," the "volume of classified material at issue," "the need for agency staff to review the material," and the "competing . . . obligations to which the same agency staffers who are responsible for gathering and reviewing documents responsive to the FOIA Request must attend." *EPIC v. Dep't of Justice*, 15 F. Supp. 3d 32, 42 (D.D.C. 2014) (internal quotation marks omitted); *cf. Brennan Ctr. for Justice v. U.S. Dep't of Justice*, No. 17 Civ. 6335 (KBF), 2018 WL 637424, at *3 (S.D.N.Y. Jan. 31, 2018) (denying request for preliminary injunction in part due to "the administrative challenges inherent in processing a large number of FOIA requests and the time constraints that competing requests and/or court orders can present").

Plaintiffs' proposal is not practicable. To the contrary, it would require DHS Privacy to process thousands more pages per month in this one case than it currently processes in its other cases combined. Holzer Decl. ¶¶ 12, 17. DHS currently has 50 other lawsuits, CIS has 40, and State has 119. Holzer Decl. ¶ 12; Eggleston Decl. ¶ 12; Stein Decl. ¶ 17. While most, if not all, of the material Defendants must process is not classified, it is voluminous due to the breadth of Plaintiffs' requests. DHS Privacy has located 28,300 potentially responsive pages, and State estimates it may have up to 110,250. Holzer Decl. ¶ 15; Stein Decl. ¶ 8. Moreover, attempting to comply with Plaintiffs' proposed schedule would interfere with the ability of Defendants' FOIA staff to meet their competing obligations. DHS Privacy would have to allocate all of its staff to Plaintiffs' requests, creating a risk of non-compliance with other court orders. Holzer Decl. ¶ 15. CIS would need to assign half of its SIG team to Plaintiffs' request, diverting those reviewers from processing hundreds of other complex requests, including requests received before Plaintiffs'. Eggleston Decl. ¶¶ 10, 18. Finally, State would need to assign approximately 40% of its litigation reviewers to this case. Stein Decl. ¶ 23. This evidence demonstrates that Plaintiffs' proposed schedule—or anything close to that schedule—is simply not practicable.

### C. The Court Should Grant Defendants Additional Time to Process

The Court should "allow the agenc[ies] additional time to complete [their] review of the records," because Defendants face "exceptional circumstances." 5 U.S.C. § 552(a)(6)(C)(i); *see also Citizens for Responsibility & Ethics in Wash. ("CREW") v. FEC*, 711 F.3d 180, 189 (D.C. Cir. 2013). The "exceptional circumstances provisions allow agencies to deal with broad, time-consuming requests (or justifiable agency backlogs)." *Id.* Courts have found exceptional circumstances where agencies show (1) a "dramatic one-year increase" in the number of FOIA requests, (2) that they are "presently engaged in extensive litigation," (3) that the "ongoing litigation has . . . strained . . . FOIA-related resources," and (4) that the agency "is taking steps to reduce the present backlog." *Daily Caller*, 152 F. Supp. 3d at 12. An agency's need for "more time to respond to a particularly burdensome request" is precisely the type of situation that the exceptional circumstances provisions are meant to address. *CREW*, 711 F.3d at 189. Here, Defendants have shown each factor that led to a finding of "exceptional circumstances" in *Daily Caller*. First, DHS Privacy and CIS have experienced 100% and 12.6% increases in FOIA requests, respectively. Holzer Decl. ¶ 11; Eggleston Decl. ¶ 7. Between FY 2008 and FY 2016, State experienced a 350% increase. Stein Decl. ¶ 16. Moreover, each agency is engaged in extensive litigation. Holzer Decl. ¶ 12; Eggleston Decl. ¶ 12; Stein Decl. ¶ 17. That litigation has strained

each agency's resources, and Plaintiffs' proposed schedule would dramatically compound that strain. Holzer Decl. ¶ 17; Eggleston Decl. ¶ 18; Stein Decl. ¶¶ 23, 26. Finally, despite the burdens they currently face, CIS and State have managed to reduce, or at least control, their backlogs. Eggleston Decl. ¶ 11 n.5; Stein Decl. ¶ 16. These facts demonstrate exceptional circumstances.

Moreover, when assessing "exceptional circumstances," the Court must consider the Plaintiffs' "[r]efusal . . . to reasonably modify the scope of [their] request or arrange an alternative time frame for processing . . . after being given an opportunity to do so by the agency." 5 U.S.C. § 552(a)(6)(C)(iii). Plaintiffs' second request has 19 items that broadly seek recommendations and communications from "any employee" of Defendants. Dkt. No. 30-4.[3] The breadth of that request has created the present dispute over whether the processing schedule will either extend for years or impose immense and impracticable processing burdens on Defendants. This dispute was not inevitable; it resulted from Plaintiffs' refusal to reasonably narrow their request. Since the start of litigation, Plaintiffs have narrowed only two of the nineteen items in their second request, one of which sought "[a]ll records since January 1, 2010 relating to . . . previous recommendations and standards to extend and redesignate TPS for nationals of Haiti." Dkt. No. 41 at 1. They have refused to narrow any of the other seventeen items in their second request.

FOIA requires courts to consider a "[r]efusal . . . to *reasonably* modify the scope of a request." 5 U.S.C. § 552(a)(6)(C)(iii) (emphasis added). Plaintiffs argue that they have satisfied this requirement because their modification of two items has narrowed the applicable timeframe by "87 percent." Tr. at 20. A modification is not reasonable, however, simply because it is less unreasonable than a prior request. A request that returns 100,000 pages for review is 90% narrower than one that returns a million. But neither is reasonable. Here, Plaintiffs have refused to reasonably modify their request, and that refusal has compounded the "exceptional circumstances" confronting Defendants. At a minimum, the Court should order Plaintiffs to confer with Defendants in a good-faith effort to narrow their request so that the processing schedule need not adopt either an extended timeline or impracticable requirements.

### D. Defendants' Request Is Consistent with Courts' Practices

Defendants' proposal that they process 300 to 500 pages per month is consistent with courts' prevailing practice in FOIA cases.[4] Courts have adopted similar schedules in no fewer than ten recent cases. *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, No. 17 Civ. 767 (RCL) (GMH), 2018 WL 1178022, at *3–*4 (D.D.C. Mar. 5, 2018) ("On this record, 500 pages per month is an appropriate rate of production."); *id.* at *3 n.3 (noting that, "[i]n a number of recent cases in this District, a production rate of 500 pages per month has been approved," and collecting cases);

---

[3] Prior to the start of the litigation, DHS asked Plaintiffs to narrow their requests, and Plaintiffs responded by deleting the words "all records relating to" before generics phrases such as "correspondence and/or communications." Dkt. No. 30-6.

[4] Defendants request that the Court base any schedule it imposes on the number of pages Defendants "process," rather than the number they "produce." Because Defendants may determine that pages are non-responsive or withhold them as exempt, *see* Stein Decl. ¶ 9 n.2, they cannot know in advance how many pages they will need to process in order to produce a certain number. As a result, a schedule based on the number of pages Defendants produce would impose unknown requirements that could prove more burdensome than anticipated.

*Republican Nat'l Comm. v. U.S. Dep't of State*, No. 16 Civ. 486 (JEB), 2016 WL 9244625, at *1 (D.D.C. Sept. 16, 2016) (500 pages per month); *Energy & Env't Legal Inst. v. U.S. Dep't of State*, No. 17 Civ. 340 (D.D.C.), Minute Order of August 22, 2017 (300 pages per month); *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 17 Civ. 205 (D.D.C.), Minute Order of June 30, 2017 (300 pages every four weeks); *Am. Ctr. for Law & Justice v. U.S. Dep't of State*, No. 16 Civ. 2516 (D.D.C.), Minute Order of June 27, 2017 (400 pages per month); *Citizens United v. U.S. Dep't of State*, No. 16 Civ. 67 (D.D.C.), Dkt. No. 17 at 3 (declining "to adopt Plaintiff's proposed production order of 2000 pages per month" and instead holding State "to its 300-page commitment"); *Freedom Watch v. Bureau of Land Mgmt.*, No. 16 Civ. 2320 (D.D.C.), Minute Order of June 13, 2017 (500 pages every 30 days); *Citizens United v. U.S. Dep't of State*, No. 15 Civ. 1720 (D.D.C.), Dkt. No 11 ¶ 10 (500 pages every four weeks); *Judicial Watch, Inc. v. U.S. Dep't of State*, No. 15 Civ. 687 (D.D.C.), Minute Order of April 4, 2017 (500 pages per month); *Leopold v. U.S. Dep't of State*, No. 14 Civ. 1770 (D.D.C.), Dkt. No. 33 at 1 (400 pages per month).

For the reasons set forth above, Defendants respectfully request that the Court enter a schedule that requires them to each process 300 to 500 pages per month. We thank the Court for considering this request.

Respectfully,

GEOFFREY S. BERMAN
United States Attorney

By:   */s/ Caleb Hayes-Deats*
CALEB HAYES-DEATS
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, NY 10007
Tel: (212) 637-2699

Encls.

cc:   Nancy Morawetz
Jessica Rofé
Fatima Carrillo, Legal Intern
Nora Searle, Legal Intern
Kevin Siegel, Legal Intern
Sarah Thompson, Legal Intern
Washington Square Legal Services, Inc.
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, NY 10012
*for Plaintiffs*