UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

National Immigration Project of the            )
National Lawyers Guild, et al.                 )
                                               )
                        Plaintiffs,            )
                                               )    No. 18-cv-00659
            v.                                 )
                                               )
UNITED STATES DEPARTMENT OF                    )
HOMELAND SECURITY, et al.                      )
                                               )
                        Defendants.

Pursuant to 28 U.S.C. § 1746, I, Eric F. Stein, declare and state as follows:

1.       I am the Director of the Office of Information Programs and Services ("IPS") of the United States Department of State (the "Department" or "State") and have served in this capacity since January 22, 2017. Previously, I served as the Acting Director since October 16, 2016, and as the Acting Co-Director since March 21, 2016.

2.       The core responsibilities of IPS include: (1) responding to records access requests made by the public (including under the Freedom of Information Act, the Privacy Act, and the mandatory declassification review requirements of Executive Order No. 13526 of December 29, 2009, governing classified national security information), by members of Congress, by other government agencies, and those made pursuant to judicial process, such as subpoenas, court orders and discovery requests; (2) records management; (3) privacy protection; (4) national security classification management and declassification review; (5) corporate records archives management; (6) research; (7) operation and management of the Department's library; and (8) technology applications that support these activities.

1

3.      In my current capacity, I am the Department official immediately responsible for responding to requests for records under the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552, the Privacy Act of 1974, 5 U.S.C. § 552a, and other records access provisions.

4.      Prior to serving in this capacity, I worked directly for the Department's Deputy Assistant Secretary ("DAS") for Global Information Services ("GIS") and served as a senior advisor and deputy to the DAS on all issues related to GIS offices and programs, which include IPS. As the Director of IPS, I have original classification authority and am authorized to classify national security information.

5.      I make the following statements based upon my personal knowledge, which in turn is based upon information furnished to me in the course of my official duties. I am familiar with the efforts of Department personnel to process the subject requests, and I am in charge of coordinating the agency's search and recovery efforts with respect to those requests.

6.      The purpose of this declaration is to provide the Court with information concerning IPS' structure and resources, and its capabilities regarding the processing of Plaintiffs' FOIA request.

### Summary of Plaintiffs' FOIA Request

7.      Plaintiffs submitted a FOIA request to the Department on November 24, 2017, seeking various records related to the termination of Temporary Protected Status ("TPS") for Haitian nationals. The time frame of the request was January 20, 2017, to present for 17 of the 19 subparts and January 1, 2010 to present for the remaining two subparts. The Department assigned this request Case Control No. F-2017-17275.

**Estimated Volume of Plaintiffs' FOIA Request and
Time Needed to Complete Processing of that Request**

8.      The Department has completed the majority of its searches and estimates that there are 10,500 potentially responsive documents, consisting mostly of emails with attachments. The Department therefore estimates that there could be around 110,250 pages to review.[1] The Department has done its best to narrow the universe of potentially responsive documents, but Plaintiffs have only been willing to narrow 2 of the 19 subparts of the request.

9.      Given its review burdens at this time, the Department cannot commit to processing[2] the remaining potentially responsive pages at a rate faster than 300 pages per month.[3] At this rate, the Department estimates it will take approximately 30 years to complete processing of the remaining pages.

10.      The Department regrets that it cannot commit to processing documents in response to Plaintiff's request at a faster rate. However, responding to the multitude of FOIA requests pending before the Department is a multi-step process that requires significant time and resources, and in recent years those resources have become extremely overburdened. The Department urges Plaintiffs to consider narrowing the request so that they can receive relevant documents in a timely fashion. The Department's FOIA workload, review process, and processing capabilities are described further below.

---

[1] The Department has used the Lexis Nexis' Discovery Services Fact Sheet to estimate that there are 10.5 pages per document on average, assuming that there is an average of one attachment per email, and that attachments are usually Word documents. *See* Lexis Nexis Discovery Services Fact Sheet, https://www.lexisnexis.com/applieddiscovery/lawlibrary/whitePapers/ADI_FS_PagesInAGigabyte.pdf; *Republican National Committee v. U.S. Dep't of State*, No, 16 Civ. 486 (D.D.C.), Dkt. No. 13-1 at 4.

[2] "Processing" a document encompasses the full review, including assessing its responsiveness and the decision to produce the document or deny its production after it being fully vetted within the appropriate Department offices, with other federal agencies, and with any other offices or organizations that would need to review the document.

[3] The Department is currently exploring options to increase its FOIA processing capabilities and will make every effort to process documents in this case at a faster rate if possible.

**The Department's FOIA Litigation Document Review Process**

11.     The FOIA review process for litigation cases is undertaken by IPS, which coordinates searches throughout the Department for potentially responsive documents. The FOIA review process is involved and complex. Once the search process is complete, each potentially responsive document must be ingested, either electronically or by scanning printed material, into IPS's document review system, known as FREEDOMS 2 ("F2"). Each document is then assigned a unique identification number, and an IPS employee manually inputs certain bibliographic data associated with each document, such as the date, to, from, and subject line (if available). IPS then assigns those documents for review to an IPS employee, or reviewer, with appropriate clearance and subject matter expertise to handle that set of documents.

12.     The reviewer performs a line-by-line review of the document to determine whether the document is responsive to the request, whether it contains any classified or other sensitive information that must be withheld under one of the nine FOIA exemptions, and whether it contains information belonging to other federal agencies. During this process, the reviewer may consult other Department employees (including, for example, employees in regional bureaus or attorneys) as s/he sees fit. These consultations often occur more than once in the process and are extremely important, particularly when the documents being reviewed were created around the same time they were requested under the FOIA. The employees being consulted are the most knowledgeable parties concerning the sensitivity of the documents or subject matter at issue. For instance, documents may concern the views or activities of individuals who could suffer reprisals if their identities or opinions are revealed. Documents may also reflect certain policies, activities, or other information of a heightened sensitivity to U.S. foreign relations. Consequently, for documents containing substantive information that

4

were created within the previous five years, IPS's general policy is to clear those documents with the relevant bureaus or offices within the Department prior to finalizing release determinations.

13.    Additionally, if the reviewer determines that a document originated with the Department, but contains another federal agency's information (or "equities"), an IPS employee will send that document to the relevant federal agency for consultation. If the reviewer determines that a document originated with another federal agency, s/he redacts any Department information that must be withheld under the FOIA, and sends the document to that federal agency for review and direct reply to the requester. The Department will also refer a document to an outside organization whenever the organization's confidential business information may be at issue, in accordance with Executive Order 12600 and 22 C.F.R. § 171.12, to allow that organization the opportunity to object to the disclosure of the information on the basis that the information in the document is exempt from disclosure under FOIA Exemption 4, 5 U.S.C. § 552(b)(4).

14.    After completing the internal and external consultation processes, the reviewer redacts any information that must be withheld under the FOIA and marks documents that the Department will release in full or in part with the required stamps, indicating the release determinations and FOIA exemptions applied. If the reviewer completing this process is relatively inexperienced, then his or her work must undergo second-level review by a senior reviewer to ensure that FOIA exemptions were properly applied to the document and that consultations with relevant Department bureaus and federal agencies occurred. Finally, for cases that are in litigation, documents proposed for release must be reviewed by Attorney-Advisers within the Office of the Legal Adviser, a process that often involves consultations between the Attorney-Advisers and IPS as well as other Department offices.

15.    After this process is completed, the Department provides the processed documents to the requester with a cover letter indicating that responsive documents were located, which (if any) exemptions were applied to documents withheld in full, and whether the requester should expect to receive additional release determinations from the Department.  The Department also provides an explanatory letter in the event that no responsive documents were located or all responsive documents were withheld in full.

### The Department's Quantifiable FOIA Processing Capabilities and Concerns

16.    Over the past several years, the Department's FOIA caseload has greatly increased and the Department's FOIA resources have been over-burdened.  This over-commitment is evident in the Department's FOIA request volume and in the queue of FOIA litigation cases, both of which have grown significantly over the past four years.  In Fiscal Year ("FY") 2008, the Department received fewer than 6,000 new FOIA requests; the number of new FOIA requests annually increased, reaching nearly 28,000 in FY 2016 (an increase of over 350%).  By the end of FY 2016, the Department had a backlog of approximately 22,600 FOIA requests pending.  As the result of a concerted push to reduce the backlog in the past six months, the Department currently has approximately 10,500 FOIA requests pending.  Despite the dramatic increase in the FOIA caseload during the last five years, it has taken several years for the resources available to process FOIA requests to increase.  For instance, the Department spent approximately $17.6 million in FY 2013, $18.3 million in FY 2014, about $33.4 million in FY 2015, about $19.1 million in FY 2016, and about $37.3 million in FY 2017 on FOIA personnel and costs associated with processing FOIA requests.

17.    Additionally, the Department has been required to divert increasing resources to FOIA litigation cases.  The Department was a defendant in approximately 50 FOIA litigation

6

cases in early 2014; currently the Department is a defendant in approximately 119 FOIA litigation cases. FOIA requests subject to litigation comprise approximately 1% of all FOIA requests at the Department, but demand a disproportionate share of IPS resources.

18.    From FY 2014 to FY 2016, the Department's FOIA backlog grew significantly due in part to exceptionally demanding court orders in several FOIA litigation cases. In those years, the Department experienced extraordinary FOIA litigation demands, including court-ordered production of approximately 30,000 emails from former Secretary Clinton in under one year, additional court orders to process tens of thousands of Secretary Clinton's emails provided to the Department by the FBI in the summer of 2016, and an order to complete a *Vaughn* Index for 10,000 pages of records within six weeks, also in the summer of 2016.[4]

19.    In all of these and many other situations, the Department has met its obligations; however, these accomplishments were done at the expense of all other requesters seeking information from the government. The backlog of FOIA requests increased from 10,045 cases in FY 2014 to 20,626 in FY 2015. The backlog increased again to 22,664 in FY 2016. There is a direct correlation between the Department's FOIA litigation demands and this backlog. Additionally, the increased backlog increases the risk of future litigation and, more importantly, results in long delays between requests for information and the production of that information.

20.    The Department's FOIA litigation demands continue to be considerable. The Department is currently the subject of court orders in 15 different litigations that in total require it to process approximately 8,300 pages per month.[5] It is also committed to making productions in 24 additional litigations, and anticipates beginning monthly productions soon in eight other

---

[4] The Department can usually commit to completing a *Vaughn* index for about 100 documents per month with existing resources.
[5] This number is approximate because in one case, *Leopold v. Dep't of State*, No. 14-cv-1771, (D.D.C.), the Department is required to process an average of 700 pages of material per month.

7

current litigations (not including this case). (*See* Exhibit 1). In all cases, the Department strives to process at least 300 pages per month. Therefore, the Department is processing at least 15,500 pages per month for litigation currently and anticipates adding another 2,400 pages per month in the near future. FOIA litigation cases that do not have regular production schedules also require resources for various tasks such as drafting and reviewing *Vaughn* indices or conducting searches for, and ingestion of, potentially responsive material. At the same time, the Department must continue to use its resources to process the thousands of requests that are not the subject of litigation.

21. In July 2016, the Department quantified its FOIA processing capability to determine how many pages it could process each month. The Department determined that each of its FOIA reviewers could process approximately 300 pages per month after those records were located through the Department's search. *See Citizens United v. State*, No. 16-cv-0108 (D.D.C.), ECF No. 11-1 (discussing how many pages the Department can finalize).

22. The Department's total capacity to process documents is difficult to precisely quantify. IPS's reviewer staff mostly works on a part-time basis because most reviewers are capped at working 1040 hours per calendar year due to their employment status with the Department. Given the cap on many reviewers' time, they may not work every pay period of the year to ensure that they do not reach their hours limit before the end of the year. As a result, it is difficult for IPS to estimate at any given time how many reviewers it has available to work on FOIA cases as the number is continuously fluctuating. On average, IPS has had 68 reviewers working on both litigation and non-litigation FOIA cases in FY 2017, and in the most recent pay period, there were 63 FOIA reviewers. There is no set number of reviewer positions for FOIA litigation, but there are 8 unfilled positions in the IPS litigation team that supports the litigation

FOIA reviewers. Additionally, as part of a recent effort to reduce the FOIA backlog, IPS received authorization to hire up to 200 FOIA reviewers to work on non-litigation FOIA requests. IPS has aggressively recruited for reviewers, but has only filled about 65 positions so far. These 65 positions are helping the Department process the 99% of FOIA requests that are not in litigation, and reduce the backlog.

23. Based on the average number of reviewers who worked in FY 2017, my current estimate is that, going forward, the Department will have the capacity to process approximately 20,400 pages per month for all FOIA litigations pending before the Department.[6] As discussed above, a large portion of that capacity is already committed to existing FOIA litigation. Plaintiffs have asked that the Department process 2,000 pages per week, or around 8,000 pages per month. In order to meet such a demand, the Department would have to devote around 40% of his current staff to reviewing this one case.

24. Furthermore, this estimate assumes that one reviewer can process about 300 pages per month. Reviewers are managing multiple FOIA litigation cases and also perform work necessary to produce other documents to the court such as *Vaughn* indices. Whereas in prior years the Department would offer to process 500 pages per month for cases in litigation, since July 2016, additional demands on the Department's FOIA program and more accurate information on its processing capability, has resulted in State adjusting its offers to 400 pages per month and then ultimately 300 pages per month in new litigation cases.

25. IPS's ability to increase the number of reviewers is constrained by the need for reviewers to possess the necessary security clearances and subject matter expertise to review materials related to U.S. foreign relations and diplomacy that may be responsive to FOIA

---

[6] As noted above, the Department is exploring options to increase its processing capabilities. *See supra* note 3.

requests. IPS cannot determine, based on a request alone, whether any of the responsive material will be classified. Moreover, pursuant to its authority under Executive Order 13526, IPS may determine that information responsive to a FOIA request needs to be classified (for example, IPS may determine that certain unmarked information must be classified at the "confidential" or "secret" level). Finally, F2 operates on a classified network, which requires any reviewers using the system to hold a security clearance of at least the SECRET level. Consequently, IPS reviewers must have clearances because they cannot know from the outset whether they will be handling classified information and because they need the clearances to operate in F2, the document review system.

26.     Exceptionally demanding FOIA litigation court orders for monthly productions result in the prioritization of those requests in litigation over all other pending requests, even those for information that the public may consider more compelling than that which is the subject of litigation. In this situation, the biggest challenges for the Department are: (1) how to use limited resources to accommodate the diverse requests the Department receives, which encompass a broad range of subjects and document types because of the Department's global mission and the broad range of programs and activities in which the Department is involved, and (2) how to cope with the exponentially growing volume of electronic records which need to be reviewed for sensitive information, such as privacy or classified information, prior to public release. During my tenure in this position, we have made every effort to use available resources to comply with these many, diverse requests while also demonstrating a willingness to work with requesters, including Plaintiff, when there are large volumes of electronic records involved, especially emails.

27.     In sum, the Department currently has the capacity to process an average of 300 pages per month in this case.  The Department does not offer to process more than this volume at this time given the existing workload and the current state of available FOIA review resources.


\*\*\*


I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this _____16th_____ day of March 2018, Washington, D.C.


Eric F. Stein

11

## FOIA LITIGATION CASES IN WHICH THE DEPARTMENT OF STATE IS COMMITTED[1] TO A PRODUCTION SCHEDULE

| Case No. | Court | Case Name | Judge | Processing Rate/Production Frequency |
|---|---|---|---|---|
| 15-cv-02117 | D.D.C. | *Leopold v. DOJ* | Moss | 1,850 pages/month (However, additional production deadlines may require review in excess of 1,850 pages/month) |
| 14-cv-01760 | D.D.C. | *Leopold v. State* | Chutkan | 700 pages/month |
| 14-cv-01771 | D.D.C. | *Leopold v. State* | Jackson | 700 pages/month on average |
| 16-cv-00423 | D.D.C. | *Citizens United v. State* | Mehta | 650 pages/month |
| 17-cv-00770 | D.D.C. | *National Security Archives v. State* | Kollar-Kotelly | 600 pages/month |
| 15-cv-01720 | D.D.C. | *Citizens United v. State* | Collyer | 500 pages/month |
| 15-cv-00687 | D.D.C. | *Judicial Watch v. State* | Boasberg | 500 pages/month (However, additional production deadlines may require review in excess of 500 pages/month) |
| 17-cv-01898 | D.D.C. | *CPI v. State* | Lamberth | 500 pages/month |
| 14-cv-01770 | D.D.C. | *Leopold v. State* | Bates | 400 pages/month |
| 16-cv-02516 | D.D.C. | *ACLJ v. State* | Boasberg | 400 pages/month |
| 16-cv-00067 | D.D.C. | *Citizens United v. State* | Cooper | 300 pages/month |
| 16-cv-00221 | D.D.C. | *ACLU v. DHS, et al.* | Kollar-Kotelly | 300 pages/month |
| 17-cv-00205 | D.D.C. | *Judicial Watch v. State* | Cooper | 300 pages/month |
| 17-cv-00340 | D.D.C. | *EELI v. State* | Howell | 300 pages/month |
| 17-cv-01425 | D.D.C. | *ACLJ v. NSA/State* | McFadden | 300 pages/month |
| 15-cv-00999 | D.D.C. | *Leopold, et al. v. NSA, et al.* | Mehta | Monthly productions; no monthly min |
| 15-cv-01459 | D.D.C. | *Brown v. State* | Kollar-Kotelly | Monthly productions; no monthly min |
| 15-cv-01478 | D.D.C. | *James Madison Project, et al. v. State* | Jackson | Monthly productions; no |

---

[1] This list includes cases in which a production schedule has either been ordered by a District Court or in which the Department has represented to the Court that it will produce documents on a certain schedule.

1

*Stevens v. U.S. Department of State*
17-2494
Stein Declaration
EXHIBIT 1

| | | FOIA LITIGATION CASES IN WHICH THE DEPARTMENT OF STATE IS COMMITTED[1] TO A PRODUCTION SCHEDULE | | |
|---|---|---|---|---|
| Case No. | Court | Case Name | Judge | Processing Rate/Production Frequency |
| | | | | monthly min |
| 16-cv-00656 | D.D.C. | *Judicial Watch v. State* | Sullivan | Monthly productions; no monthly min |
| 17-cv-00118 | D.D.C. | *Federation of American Immigration Reform v. State* | Mehta | Monthly productions; no monthly min |
| 17-cv-00729 | D.D.C. | *Judicial Watch v. State, et al.* | Contreras | Monthly productions; no monthly min |
| 17-cv-01799 | N.D. CA | *Currier v. DHS et al.* | Corley | Monthly productions; no monthly min |
| 17-cv-00864 | D.D.C. | *Judicial Watch v. State* | Sullivan | Monthly productions; no monthly min |
| 16-cv-01975 | D.D.C. | *ACLJ v. State* | Sullivan | Monthly productions; no monthly min |
| 17-cv-01525 | D.D.C. | *Leopold, et al. State* | Friedrich | Monthly productions; no monthly min |
| 17-cv-01585 | D.D.C. | *Terry, et al. v. State* | Sullivan | Monthly productions; no monthly min |
| 17-cv-02685 | D.D.C. | *Victor Avila, Jr. et al. v. DOS* | Contreras | Monthly productions; no monthly min |
| 13-cv-01876 | D.D.C. | *DIBC v. State, et al.* | Collyer | Every two months; no monthly minimum |
| 16-cv-01256 | D.D.C. | *ACLU v. CIA, et al.* | Sullivan | Every eight(8) weeks; no monthly min |
| 17-cv-01061 | D.Ct. | *Council on American-Islamic Relations – Connecticut et al. v. USCIS et al.* | Covello | Every eight(8) weeks; no monthly min |
| 16-cv-01751 | D.D.C. | *ACLJ v. State* | Kollar-Kotelly | Every six(6) weeks; no monthly min |
| 16-cv-02517 | D.D.C. | *Leopold, et al. v. ODNI, et al.* | Kollar-Kotelly | Every six(6) weeks; no monthly |

2

*Stevens v. U.S. Department of State*
17-2494
Stein Declaration
EXHIBIT 1

## FOIA LITIGATION CASES IN WHICH THE DEPARTMENT OF STATE IS COMMITTED[1] TO A PRODUCTION SCHEDULE

| Case No. | Court | Case Name | Judge | Processing Rate/Production Frequency |
|---|---|---|---|---|
| | | | | min |
| 17-cv-03329 | E.D.N.Y., Mann | *Cox v. DOJ, et al.* | Mauskopf (referred to Mann) | Large-scale production with final production deadline but monthly minimum |
| 12-cv-00893 | D.D.C. | *Judicial Watch v. State* | Bates | Large-scale monthly productions (thousands of pages) with final production deadline but no monthly minimum |
| 17-cv-00066 | D.D.C. | *Elgabrowny v. CIA et al.* | Chutkan | Currently making productions, however, State has not committed to a production schedule. |
| 17-cv-0937 | D.D.C. | *Center for Biological Diversity v. State* | Chutkan | Currently making productions, however, State has not committed to a production schedule |
| 16-cv-02027 | D.D.C. | *Judicial Watch v. State* | McFadden | Monthly productions with final production deadline but no monthly minimum |
| 17-cv-00951 | D.D.C. | *Scoville v. State* | Chutkan | Monthly productions with final production deadline but no monthly minimum |

3

*Stevens v. U.S. Department of State*
17-2494
Stein Declaration
EXHIBIT 1

| | | RECENTLY FILED FOIA LITIGATION CASES IN WHICH STATE ANTICIPATES IT WILL MAKE MONTHLY PRODUCTIONS | |
|---|---|---|---|
| **Case No.** | **Court** | **Case Name** | **Judge** |
| 17-cv-07572 | S.D.N.Y. | *Knight First Amendment Institute at Columbia University v. DHS et al.* | Carter |
| 17-cv-02225 | D.D.C. | *Protect Democracy Project v. State* | Bates |
| 18-cv-00659 | S.D.N.Y. | *National Immigration Project of the National Lawyers Guild et al. v. DHS et al.* | Abrams |
| 17-cv-02080 | D.D.C. | *Muslim Advocates et al. v. DOS et al.* | Chutkan |
| 17-cv-02177 | D.D.C. | *Government Accountability Project et al. v. DOS* | Sullivan |
| 17-cv-02489 | D.D.C. | *Judicial Watch v. DOS* | Boasberg |
| 18-cv-00300 | D.D.C. | *Judicial Watch v. DOS* | Kelly |
| 17-cv-02032 17-cv-02438 | D.D.C. | *Competitive Enterprise Institute v. State* | Mehta |
| 18-cv-00276 | D.D.C. | *Competitive Enterprise Institute v. State* | Jackson |

4

*Stevens v. U.S. Department of State*
17-2494
Stein Declaration
EXHIBIT 1