I395nipC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS GUILD,
*et al.*,

                  Plaintiffs,              New York, N.Y.

           v.                   18 Civ. 659 (RA)

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

                  Defendants.

------------------------------x

                          March 6, 2018
                          11:00 a.m.

Before:

              HON. RONNIE ABRAMS,

                      District Judge

APPEARANCES

WASHINGTON SQUARE LEGAL SERVICES, INC.,
    Attorneys for Plaintiffs
BY:  NANCY MORAWETZ
    NORA SEARLE, Legal intern
    FATIMA CARRILLO MORAN, Legal intern
    KENN SIEGEL, Legal intern
    JESSICA ROFÉ, Immigrant Defense Fellow

GEOFFREY S. BERMAN
    Interim United States Attorney for the
    Southern District of New York
BY:   CALEB HAYES-DEATS
    Assistant United States Attorney

I395nipC

MS. SEARLE:  Yes.

THE COURT:  So, why don't we then plan to meet at 2:00 on March 30th and if you can talk in advance and try and agree on a briefing schedule, that would be great.  I understand that you may have different views on how fast that schedule should move.

Do we have any other issues we need to discuss today?

MS. SEARLE:  Yes, your Honor.  We would like to circle back to the issue of the production schedule.

Having looked at the hit counts that the opposing counsel and the agencies have identified, in order to comply with sort of the urgency that we have identified, time-wise, of this request --

THE COURT:  Remind me of the dates that we are talking about.

MS. SEARLE:  Certainly, your Honor.

So, some relevant dates, although Haitian TPS terminates -- well, this is actually fairly quickly, July 22nd, 2019, there are active legislative proposals that are being discussed in conjunction with DACA now that the injunction was imposed on that area, and then additionally there is these 58,000 -- over 58,000 people who are unable to make even the most basic plans for their future and that is to say nothing of all of their children and other family members.

So, given all of those issues and the fact that, as we

I395nipC

have noted, these legislative proposals are being discussed as we speak, we would ask that Court order production of the documents on a rolling basis, and in order to get them in the time frame that is needed, we would ask for them to be rolled out at 2,000 documents a week.

THE COURT:  Mr. Hayes-Deats, what is your view of what a reasonable production schedule would look like?

MR. HAYES-DEATS:  Your Honor, I think we are going to need letter briefing on this issue.  Our view is nowhere close to 2,000 pages a week and just to push back a little bit on what plaintiff's counsel said, the statute creating TPS explicitly forecloses judicial review so we think this idea that these documents are going to be useful to people who are trying to make plans for their future is a little bit attenuated and we think that the urgency here is no different than any plaintiff who is seeking documents relating to a matter of public concern on which they feel there is an ongoing discourse.  But, coming back to the briefing schedule or the production schedule, our view would be substantially more modest.  I think our view would be 300 pages a month is --

THE COURT:  How many pages do you anticipate will be produced in response?  Do you have a sense of that yet?

MR. HAYES-DEATS:  Sure, your Honor.

So, DHS' initial searches and, granted, it is not clear that all of these documents are responsive but DHS'

I395nipC

THE COURT:  That's fine.  How long do plaintiffs need to respond?

MS. SEARLE:  A week, your Honor.

THE COURT:  Okay.  Fine.

In the meantime, without agreeing to forego any category of documents, is there no agreement that can be reached to prioritize the responses that may be most relevant and get those first?

MS. SEARLE:  So, your Honor, we have actually already done some significant narrowing that we have informed opposing counsel of.  In fact, in terms of time span for both of our requests we have actually narrowed it by seven years, that's 87 percent of the time period.  We are now only asking for pre-2017 documents to include the briefing packets that would have been relevant during those time periods and so in terms of narrowing we feel that we have actually --

THE COURT:  Again, without giving up your right to seek the additional 28,000 or 29,100 or whatever it may be after the rest of the searches are done, is there no way to prioritize responses based on the particular person who may have reviewed those materials?  Wouldn't that be in your interest to at least have those up front without foregoing the rest?

MS. SEARLE:  Certainly, your Honor.

THE COURT:  Is that something you all can talk about