I395nipC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

NATIONAL IMMIGRATION PROJECT
OF THE NATIONAL LAWYERS GUILD,
*et al.*,

           Plaintiffs,         New York, N.Y.

        v.         18 Civ. 659 (RA)

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY, *et al.*,

           Defendants.

------------------------------x

                    March 6, 2018
                    11:00 a.m.

Before:

               HON. RONNIE ABRAMS,

                      District Judge

                APPEARANCES

WASHINGTON SQUARE LEGAL SERVICES, INC.,
     Attorneys for Plaintiffs
BY:  NANCY MORAWETZ
     NORA SEARLE, Legal intern
     FATIMA CARRILLO MORAN, Legal intern
     KENN SIEGEL, Legal intern
     JESSICA ROFÉ, Immigrant Defense Fellow

GEOFFREY S. BERMAN
     Interim United States Attorney for the
     Southern District of New York
BY:   CALEB HAYES-DEATS
     Assistant United States Attorney

I395nipC

(Case called)

THE DEPUTY CLERK:  Parties, please state your name for the record.

MS. SEARLE:  Norah Searle.  I'm a law student at NYU. Here with me are Fatima Carrillo Moran and Kenn Siegel, also NYU law students, and our supervisors Nancy Morawetz and Jessica Rofé.

THE COURT:  Good morning, all.

MS. SEARLE:  Good morning.

MR. HAYES-DEATS:  Good morning, your Honor.  Caleb Hayes-Deats for the defendant.

THE COURT:  Good morning.

I just saw that you submitted a letter last night. I'm sorry, I didn't have the time to read it but I also didn't want to keep you here waiting while I did so.  So, why don't you just provide me a summary.  If, rather, you think we should take a break I'm happy to read it.  But, if you can kind of sort of cut to the chase here and we can talk about where we are and where we should go next, I'm happy to do that.

MS. SEARLE:  Thank you, your Honor.

So, on our end we really have three requests which were mainly laid out in the letter as well.  So, first we would ask to create a production schedule.  Additionally, we would ask to set a pre-motion conference date for March 27th, following the March 22nd production of the briefing packets as

I395nipC

we expect to file a motion on the exemptions asserted and the government has told us that it expects to withhold most of the documents.

Then, third, we propose do combined briefing on those March 22nd documents, and the set of documents that we mentioned in our letter, it is 118 pages that was produced to another organization who filed a very similar FOIA request and they received these documents around July 2017.  We see them as very salient to our requests and responsive and we would ask the government to produce a Vaughn index as to those documents and move forward on briefing for both of those.

THE COURT:  Briefing as to exemptions or briefing as to whether you have standing even to do that?

MS. SEARLE:  Certainly, your Honor.

Briefing us to exemptions.  We see the documents as very, very relevant to our own FOIA.  They involve correspondence on Haitian TPS which is squarely within what we are contesting and they do involve the relevant agencies, and we see documents within there as very, very relevant including e-mails that indicate that within at five-hour time span the agency went from a proposed rule to exempt TPS for Haiti for 18 months to five hours later a proposed rule determining, and another email that seems to set out review of 2015 TPS grants that may set out an agenda on review going forward and, perhaps also, a new standard.

I395nipC

THE COURT:  Were these documents technically responsive, or are they, to your requests?

MS. SEARLE:  Yes, your Honor.  We believe so, yes.

THE COURT:  All right.  Thank you.

Now Mr. Hayes-Deats.

MR. HAYES-DEATS:  Your Honor, which order would you like me to take those requests in?

THE COURT:  Whatever would you like.

MR. HAYES-DEATS:  Sure.

So, with respect to -- well, let me start with respect to the combination of a request for briefing on certain exemptions and, simultaneously, a production schedule.  We would oppose that as unreasonable because we feel that the agency should focus on one task at a time, either briefing exemptions or producing materials but to ask them to do both at the same time, both are very work-intensive tasks and so both would require a lot of effort and we think that would be very burdensome.

And I can address, to the extent your Honor wishes, which one should be prioritized, in our view.

THE COURT:  Why don't do you that.

MR. HAYES-DEATS:  So, we think that the deliberative process privilege is going to figure prominently in this case.  The documents that plaintiffs have requested are explicitly deliberative.  They have requested recommendations concerning

I395nipC

TPS from my any employees of four different agencies and the decision about whether or not to extend TPS or terminate TPS is discretionary, there are a large number of factors that need to be considered by the Secretary in making that decision.  And so, we think making recommendations about what decision to make will fall well within the deliberative process privilege and we think that early guidance on that issue from your Honor would help the agencies to process the materials that are going to be coming down the road.

THE COURT:  You want an advisory opinion from me?

MR. HAYES-DEATS:  No.

We think that when the March 22nd productions are made, and right now the agencies are on course to make them, that they will implicate the deliberative process privilege and, as plaintiffs have just indicated, they expect to challenge those withholdings.  We have preliminarily discussed the issue of the basis on which they're going to challenge those withholdings and we think that there will likely be a dispute, so we think that that would present a ripe issue for your Honor to resolve that could then provide the agencies with guidance for productions that they're going to do moving forward.

THE COURT:  I don't think they need to wait for me to continue.  I really don't.  So, let me ask you this.  So, there is agreement, as I understand it, that there will be a

I395nipC

production on March 22nd and so plaintiffs are requesting a conference shortly thereafter, right?

MS. SEARLE:  Yes, your Honor.

THE COURT:  To set a schedule for briefing on exemptions asserted with respect to that production; is that right?

MS. SEARLE:  That's correct, your Honor.

THE COURT:  Do you have any objection to that?

MR. HAYES-DEATS:  Not with respect to the March 22nd production.  We do have an objection with respect to the production that was made to our response by a third-party -- in response to a request by third-party.

THE COURT:  Let's start with the March 22nd production.  So, all we are going do at this conference that you are requesting on March 29th is set a schedule for briefing; is that right?

MS. SEARLE:  Your Honor, we would request it for the 27th, if that's possible, but we are happy to do it on the 29th.

THE COURT:  All right.  But, substantively, so I can figure out for my scheduling, all we are going to be doing then is just setting schedule for briefing on the March 22nd production?

MS. SEARLE:  That's correct, your Honor.

THE COURT:  Okay.  So, why don't we do that first.  I

I395nipC

can have a conference at 11:00 or 2:00.  Do you have a

preference?

MS. SEARLE:  Can we do 2:00 p.m., your Honor?

THE COURT:  Sure.

Does that work for you as well, Mr. Hayes-Deats?

MR. HAYES-DEATS:  Your Honor, I'm sorry.  I actually

have a conflict on the 27th; I am going to be interviewing a

witness in a different case.

THE COURT:  How about the 28th?  Does that work?  How

about 11:30 on the 28th?

MS. SEARLE:  Yes, your Honor.  That's fine.

THE COURT:  Does that work for you?

MR. HAYES-DEATS:  That works.

THE COURT:  All right.  So, we will set this on for a

conference on the 28th.  If you could submit a letter to me the

day before and, again, I'm sorry I didn't realize this one had

been submitted so I apologize, but I will read it beforehand.

To the extent I can save a little time I will do that.  You

don't need to lay out all the arguments you intend to make but,

for example, if you can reach agreement on dates or briefing,

that would be great so it could be a very short letter.

MS. SEARLE:  Your Honor, I would just ask, I may have

misspoke earlier.  We would like, if possible, to also address

briefing not simply on the March 22nd briefing packets but also

that 118-page document.

I395nipC

THE COURT:  On that date?  Or today?

MS. SEARLE:  On that date.

THE COURT:  Okay.  All right.  So, in any event, we have a conference scheduled for March 28th at 11:30.

MS. SEARLE:  Thank you, your Honor.

THE COURT:  At the very least we are going to be setting a briefing schedule on the March 22nd production.

So now as I understand the second issue in a different case, the government asserted various exemptions and the plaintiff in that case didn't challenge them but from plaintiff's perspective all of those documents are responsive to the requests in this case.

MS. SEARLE:  Yes.

THE COURT:  Can I hear your position on that, please?

MR. HAYES-DEATS:  Sure, your Honor.

So, our position is that plaintiffs lack standing to challenge exemptions that were asserted in response to a request by a different requester and there is good case law for that.  And what it says is that a requestor who is not named in the request does not have standing to challenge the withholdings.  And the reason for that is there are a variety of administrative procedures that requestors generally have to go through that give agencies an opportunity to make decisions about the withholding and also to correct errors in earlier decisions about withholdings.

I395nipC

THE COURT:  So, even assuming that you are correct about standing, if these documents are responsive to the requests in this case, I assume you can respond pretty quickly. I mean, if those exemptions have already been asserted in this different action and those documents are responsive to their requests in this case, can you produce those documents with the responses to these plaintiffs on March 22nd?

MR. HAYES-DEATS:  Your Honor, I think that timeline will be too difficult for the agency.

THE COURT:  Why?

MR. HAYES-DEATS:  Because we have different personnel examining new documents.

THE COURT:  But how could the exemptions be any different?  I understand your standing issue, I am not ruling on it and haven't read the case law, but assuming you are correct on that if the documents are responsive in this case, why would you have any reason to believe that the exemptions asserted would be different?

MR. HAYES-DEATS:  I just want to come back to the issue of exhaustion.  Because, if NILC had exhausted its request, the agencies would have had several more opportunities to examine the withholdings that plaintiffs now purport to challenge.  So, NILC is not in a position to move forward with the challenge that the plaintiffs want us to make and the agency would have gone multiple steps to review withholdings

I395nipC

that plaintiffs now seek to challenge before they end up in court.  What we are asking for is that same opportunity to review those documents again, conduct that review before we end up in court on them.  And that's what FOIA provides for through the exhaustion scheme.

THE COURT:  How long would that take?

I mean, you can understand, I'm sure, my belief that this should take you less time than it might take you to review documents that haven't previously been reviewed so, again, even if you are right, without my ruling on it, on standing and on exhaustion, why can't you do that review very quickly because it has essentially already been done, and then allow for the exhaustion period?

MR. HAYES-DEATS:  First of all, your Honor, plaintiffs aren't just asking for review and processing, they're asking for a Vaughn index which has not been done and would be very cumbersome to do and would be a prerequisite should the agency decide to try to justify withholdings in summary judgment for further proceedings, in fact the very proceedings that plaintiffs are now requesting.  So, it hasn't been done in the sense that your Honor means.  They have been released but the justification has not been gone through by the agency.

THE COURT:  Even when they were released the exemptions weren't written on the sides of the redacted material?

I395nipC

MR. HAYES-DEATS:  No, the exemptions were -- yes, the redactions were marked with the exemptions; that's correct.

THE COURT:  So, how long would it take you to release those documents to these plaintiffs as documents responsive to this request and then allow for the exhaustion period?  How long would that take?

MR. HAYES-DEATS:  I am just hung up on the last part of your question.

THE COURT:  I guess I am not as familiar with how the exhaustion process works.

MR. HAYES-DEATS:  Sure.

THE COURT:  I am looking at the fact you have already produced these documents.

MR. HAYES-DEATS:  Sure.

THE COURT:  Someone has already reviewed them, someone has decided what exemptions apply and it has got to be the case that you can move forward on these documents assuming they are, indeed, responsive to these plaintiff's requests, faster than if no one had reviewed them previously.

MR. HAYES-DEATS:  Okay.  So, just to be clear, though, we are not arguing that they should exhaust the NILC request. We are arguing we should be allowed to reprocess these documents in connection with their request.

THE COURT:  Okay.  How long would that take, the reprocessing?

I395nipC

MR. HAYES-DEATS:  Your Honor, I think we would like a week to six months.  And, just to be clear, we haven't yet had an opportunity to present to your Honor facts relating to the burden that is on DHS and the other agencies right now.  We would request, however, that opportunity at some point.

THE COURT:  Sorry.  What is a week to six months?

MR. HAYES-DEATS:  I'm sorry.  I meant four weeks to six weeks, or a month to six weeks.

But, your Honor, just to finish my answer?

THE COURT:  Sure.  Of course.

MR. HAYES-DEATS:  When we were last here your Honor gave the agencies two tasks to prioritize, one was this March 22nd production, and the second was crafting a search that was responsive to plaintiffs' requests, and they have been doing that.  Essentially what plaintiffs are now requesting is that your Honor give a third task to prioritize on top of those other two and it is becoming burdensome for the agencies.  There are a limited number of staff that they can devote to this as opposed to other FOIA requests and so to ask those staff to do more and more in response to this request becomes an issue.

THE COURT:  I do understand that and I fully intend to be reasonable.  On the other hand, since these documents have already been reviewed and the proper exemptions identified, it's hard for me and it doesn't sound like there is a large

I395nipC

number of documents; is that right?  How many did you say there were?

MS. SEARLE:  118 pages, your Honor.

THE COURT:  118 pages?  It really is hard for me to see how this could take a tremendous amount of time.  All of those decisions have already been made.  I understand your position that you should be able to review them again with a fresh eye towards if they're responsive to these plaintiffs and if you identify the proper exemptions but it is hard for me to understand why that is so burdensome.

MR. HAYES-DEATS:  Your Honor, to put a little more color on the timing, if NILC had wanted to challenge the holdings that plaintiffs now want to challenge they would have had I think it is 90 days to raise their appeal, DHS would have had 20 days to respond to the appeal.  Following the 20 days, NILC would have needed to go to court.  There would have been a time for DHS to answer NILC complaint.  So, these procedures do play out over time so I don't think four to six weeks is inconsistent, I think it is much tighter than the timeline I just outlined for your Honor.

THE COURT:  Do you have any objection to, just to avoid the litigation on standing, would you have an objection to the government producing these documents in four weeks?

MS. SEARLE:  Your Honor, we would object to that, mainly because we feel that these documents are very clearly

I395nipC

responsive to our request, they really fit squarely within correspondence regarding Haitian TPS, and we note that we are already in court unfortunately on this case and the agency we feel could have produced these documents which they were aware back in November when we filed this request.  At this point, as noted, the exemptions have been invoked for the documents.

THE COURT:  Could these documents be part of the March 22nd production?  I mean, I understand you haven't seen that production yet but could it be that the same documents were going to be included in that production?

MS. SEARLE:  No, your Honor, not all of them.  These documents involve many e-mails and we don't believe that all of those e-mails would be contained within the briefing packets that we requested.

MR. HAYES-DEATS:  In fact, your Honor, if I can clarify?  None of these documents would be within the March 22nd production.  The March 22nd production concerns three briefing packets; one regarding a decision in October, another regarding a decision in November, and a final one regarding decision in January.  Everything that was produced to NILC was produced in July of last year months before any of these briefing packets circulated.

THE COURT:  What I am inclined to do is this.  I am inclined to just set three weeks for the production of these documents and then perhaps move the conference to later that

I395nipC

week, to the next day, to March 30th, and then we can set a schedule for briefing on both of these subjects.

Are plaintiffs agreeable to that?

MS. SEARLE:  Yes, your Honor.  Thank you.

THE COURT:  So, why don't we do that.  I'm going to ask you, Mr. Hayes-Deats, to have that production made by March 29th.  And then are you all free on March 30th?

MS. SEARLE:  Yes, your Honor.

THE COURT:  Does 10:00 or 10:30 work?

MR. HAYES-DEATS:  Your Honor, if possible, if we can push it to the next week?  I may be coming back from St. Paul on the 29th, either the night of the 29th or the morning of the 30th.

THE COURT:  Do you think we can make it in the afternoon on the 30th?

MR. HAYES-DEATS:  Yes, your Honor.

THE COURT:  Okay.  So, why don't we do that.  What time?  I don't want to cut any trip short.  What time do you think you could safely get to court on the 30th?  And just keep in mind for those who are observant, Passover I think it is the first night of the 30th so if anyone needs to leave early, let's build that in to any issues.  I don't know if that is an issue for anyone or not.  Does 2:00 work?  Does 3:00 work?

MR. HAYES-DEATS:  2:00 would work.

THE COURT:  Does 2:00 work for everyone?

I395nipC

MS. SEARLE:  Yes.

THE COURT:  So, why don't we then plan to meet at 2:00 on March 30th and if you can talk in advance and try and agree on a briefing schedule, that would be great.  I understand that you may have different views on how fast that schedule should move.

Do we have any other issues we need to discuss today?

MS. SEARLE:  Yes, your Honor.  We would like to circle back to the issue of the production schedule.

Having looked at the hit counts that the opposing counsel and the agencies have identified, in order to comply with sort of the urgency that we have identified, time-wise, of this request --

THE COURT:  Remind me of the dates that we are talking about.

MS. SEARLE:  Certainly, your Honor.

So, some relevant dates, although Haitian TPS terminates -- well, this is actually fairly quickly, July 22nd, 2019, there are active legislative proposals that are being discussed in conjunction with DACA now that the injunction was imposed on that area, and then additionally there is these 58,000 -- over 58,000 people who are unable to make even the most basic plans for their future and that is to say nothing of all of their children and other family members.

So, given all of those issues and the fact that, as we

I395nipC

have noted, these legislative proposals are being discussed as we speak, we would ask that Court order production of the documents on a rolling basis, and in order to get them in the time frame that is needed, we would ask for them to be rolled out at 2,000 documents a week.

THE COURT:  Mr. Hayes-Deats, what is your view of what a reasonable production schedule would look like?

MR. HAYES-DEATS:  Your Honor, I think we are going to need letter briefing on this issue.  Our view is nowhere close to 2,000 pages a week and just to push back a little bit on what plaintiff's counsel said, the statute creating TPS explicitly forecloses judicial review so we think this idea that these documents are going to be useful to people who are trying to make plans for their future is a little bit attenuated and we think that the urgency here is no different than any plaintiff who is seeking documents relating to a matter of public concern on which they feel there is an ongoing discourse.  But, coming back to the briefing schedule or the production schedule, our view would be substantially more modest.  I think our view would be 300 pages a month is --

THE COURT:  How many pages do you anticipate will be produced in response?  Do you have a sense of that yet?

MR. HAYES-DEATS:  Sure, your Honor.

So, DHS' initial searches and, granted, it is not clear that all of these documents are responsive but DHS'

I395nipC

initial searches identified 28,000 pages in response to this request. So, we are talking about in the DHS' case, at least, a large volume of documents. Now, ICE's pages are much more limited, they've identified about 1,100. CI S and State are still trying to figure out and they hope to have that information next week. But, it is quite clear that this is going to be a substantial amount of volume and it's inherent in plaintiffs' request that this will be a substantial amount of volume. They've asked for any communication by any employee of four agencies relating to Haitian TPS so we are talking about a lot of volume here and it's our position that we could produce the documents that we think plaintiffs are going to find much more relevant on a much quicker basis if we could just come to some agreement on how to narrow the request. For example, if what they're really interested in is whether these decisions follow the statutory standards to the extent that that's not deliberative, the decision makers were the Secretary of DHS in collaboration with the Secretary of State and the Director of CIS. That's three people that we could search for responsive documents and potentially vastly limit the scope of what we are talking about here but we haven't been able to reach any agreement on that narrowing with plaintiffs.

MS. SEARLE: Your Honor, if I may?

THE COURT: Yes.

MS. SEARLE: We would just like to note that assuming

I395nipC

that those 28,300 documents are indeed that full number because we don't know, really, what that number contains, it is possible that it would have many duplicates.  But, assuming it is really 28,300 responsive documents, we would note that on the production schedule opposing counsel has suggested we would get full production in seven years and, as we have identified, Haitian TPS is set to terminate July 22nd, 2019 and there are multiple proposals on what Congress may do for TPS holders that are being considered now.  And so, we would push back on the idea that a schedule of that nature would really make sense in this case.

THE COURT:  Yes?

MR. HAYES-DEATS:  Your Honor, the statutory language of FOIA focuses on practicable and we think that the proposal that plaintiffs have outlined is not practicable and thus is not consistent with FOIA.  Practicability, as different courts have I think found in the past, also looks at the burden on the agency and here we haven't been able to put any of that information before your Honor.  So, we would request the opportunity to put that information before your Honor before any schedule, remotely along the lines of what plaintiffs have requested, is entered.

THE COURT:  I am happy to read whatever you would like to submit.  When can you get that to me?

MR. HAYES-DEATS:  Your Honor, would a week be okay?

I395nipC

THE COURT:  That's fine.  How long do plaintiffs need to respond?

MS. SEARLE:  A week, your Honor.

THE COURT:  Okay.  Fine.

In the meantime, without agreeing to forego any category of documents, is there no agreement that can be reached to prioritize the responses that may be most relevant and get those first?

MS. SEARLE:  So, your Honor, we have actually already done some significant narrowing that we have informed opposing counsel of.  In fact, in terms of time span for both of our requests we have actually narrowed it by seven years, that's 87 percent of the time period.  We are now only asking for pre-2017 documents to include the briefing packets that would have been relevant during those time periods and so in terms of narrowing we feel that we have actually --

THE COURT:  Again, without giving up your right to seek the additional 28,000 or 29,100 or whatever it may be after the rest of the searches are done, is there no way to prioritize responses based on the particular person who may have reviewed those materials?  Wouldn't that be in your interest to at least have those up front without foregoing the rest?

MS. SEARLE:  Certainly, your Honor.

THE COURT:  Is that something you all can talk about

I395nipC

amongst yourselves?  I mean, before I rule on the pace of the production it seems like Mr. Hayes-Deats you are amenable to at least prioritizing certain searches; is that right?

MR. HAYES-DEATS:  Yes.

THE COURT:  So, I think that that would be worthy of doing so why don't you talk amongst yourselves and see if you can reach agreement on the searches that you think are most important.  Even if you still have disagreement as to how fast that production or the rest of the production should be made and it may make sense for -- I don't know when you want to submit that to me in what form, if you want to put it in one of the letters that you're -- or put it in a separate letter to me?  You can use my courtroom right now if you would like to and talk about that, or if you need to go back to the agency afterwards, think about that, and get back to me next week sometime as to whether you have reached any agreement as to prioritization because I think that's going to factor into the arguments that you make about how fast the production should be made.

MR. HAYES-DEATS:  Your Honor, I agree with that and in light of the need for those negotiations could we actually have two weeks to submit our letter?

MS. SEARLE:  Your Honor, we don't think that's appropriate given sort of what we have already discussed about urgency and about the fact that the documents have been

I395nipC

identified in terms of the March 22nd production and the 118 pages. In addition, we would note that we are very happy to talk about prioritization with opposing counsel but we would also ask that they continue with processing their search while we do that.

THE COURT: Yes. I don't think there is any reason to think that the search will stop but I don't think there is a need to put off the date but why don't you meet today, try and reach a resolution on Monday, and I am just going to ask you to send me a letter by Tuesday as to whether or not you have reached any agreement on prioritizing certain responses and then I will still anticipate getting the government's letter on Friday and plaintiff's response a week later.

MR. HAYES-DEATS: Your Honor, respectfully, could I ask that we be allowed to submit separate letters on Tuesday?

THE COURT: Sure.

MR. HAYES-DEATS: It is very difficult to go back and forth with the agency.

THE COURT: That's fine. I don't want you to spend time on sort of coordinating things if that takes your time. That's fine with me.

MR. HAYES-DEATS: Thank you.

MS. SEARLE: Thank you.

THE COURT: Then, Mr. Hayes-Deats, tell me. I have read a lot about vacancies at different agencies including the

I395nipC

state department.  I don't have a full sense and my question is really how this is going to affect your production.  I am not sure what it is like at DHS right now or Department of Homeland Security, but you if you can let me know if you have a sense of that now or put it in your letter?

MR. HAYES-DEATS:  I think we are going to want to describe in detail the situation at each agency in our letter but is your Honor asking specifically about --

THE COURT:  I was just curious.  I'm not asking you to do any more research to give me specific numbers.  I was just trying to get a sense of is the reason this is so burdensome, from your perspective, because of the vacancies or is that just exacerbating what is already a time-consuming process?

MR. HAYES-DEATS:  So, I think there are two components to this.

So, first of all, your Honor is correct that there are vacancies including at many agencies' FOIA departments but, on the other hand, there have also been drastic increase at FOIA requests at each of the agencies that received this request. And so, the combination of those two things has created a very difficult burden on the agencies.

THE COURT:  Okay.

MR. HAYES-DEATS:  And we will explain that in more detail in the letter.

THE COURT:  That's fine.

I395nipC

So, were there any other -- yes?

MS. SEARLE:  Your Honor, very quickly.

We wanted to make very clear that we would like to prioritize responses which is the processing of the searches but responses and -- yes.  Sorry.  That's it.

MS. MORAWETZ:  Just whether you were talking about prioritizing searches or prioritizing the actual processing of responses.

THE COURT:  I assumed both.

MS. MORAWETZ:  Yes.

THE COURT:  But I'm happy to hear you out on that.  I had thought it was actually the responses but you know more than I do about exactly where you are in the process.  So, if you could make that clear in your letter?  I think that's, obviously, very important.

MS. MORAWETZ:  Okay.

THE COURT:  And I assume Mr. Hayes-Deats you are talking about both the searches and responses?

MR. HAYES-DEATS:  Yes.  Obviously the searches have to be complete before we can begin processing documents to see whether they're responsive.

THE COURT:  Exactly.

MR. HAYES-DEATS:  Agencies are at different places in that process and there is actually a lot that goes into the search but we can lay that all out for your Honor.

I395nipC

THE COURT:  All right.  Thank you.

So, I think we have a plan.  Have the letters about whether you have reached any agreement on the 13th about priority, and then I have a letter from the government coming on the 16th and a response from plaintiff on the 23rd, and then we are going to meet on the 30th to see where we are.  I am going to urge you, as best you can, to work together.  I am sure you have been trying do that already and I appreciate that.  And I think that's it.

Are there any other issues you think we need to discuss today?

MS. SEARLE:  No.  Thank you, your Honor.

MR. HAYES-DEATS:  No, not from the government, your Honor.

THE COURT:  All right.  Thanks, all.  Have a nice weekend.

o0o