# EXHIBIT 4

I395nipC

THE COURT:  That's fine.  How long do plaintiffs need to respond?

MS. SEARLE:  A week, your Honor.

THE COURT:  Okay.  Fine.

In the meantime, without agreeing to forego any category of documents, is there no agreement that can be reached to prioritize the responses that may be most relevant and get those first?

MS. SEARLE:  So, your Honor, we have actually already done some significant narrowing that we have informed opposing counsel of.  In fact, in terms of time span for both of our requests we have actually narrowed it by seven years, that's 87 percent of the time period.  We are now only asking for pre-2017 documents to include the briefing packets that would have been relevant during those time periods and so in terms of narrowing we feel that we have actually --

THE COURT:  Again, without giving up your right to seek the additional 28,000 or 29,100 or whatever it may be after the rest of the searches are done, is there no way to prioritize responses based on the particular person who may have reviewed those materials?  Wouldn't that be in your interest to at least have those up front without foregoing the rest?

MS. SEARLE:  Certainly, your Honor.

THE COURT:  Is that something you all can talk about

I395nipC

amongst yourselves?  I mean, before I rule on the pace of the production it seems like Mr. Hayes-Deats you are amenable to at least prioritizing certain searches; is that right?

MR. HAYES-DEATS:  Yes.

THE COURT:  So, I think that that would be worthy of doing so why don't you talk amongst yourselves and see if you can reach agreement on the searches that you think are most important.  Even if you still have disagreement as to how fast that production or the rest of the production should be made and it may make sense for -- I don't know when you want to submit that to me in what form, if you want to put it in one of the letters that you're -- or put it in a separate letter to me?  You can use my courtroom right now if you would like to and talk about that, or if you need to go back to the agency afterwards, think about that, and get back to me next week sometime as to whether you have reached any agreement as to prioritization because I think that's going to factor into the arguments that you make about how fast the production should be made.

MR. HAYES-DEATS:  Your Honor, I agree with that and in light of the need for those negotiations could we actually have two weeks to submit our letter?

MS. SEARLE:  Your Honor, we don't think that's appropriate given sort of what we have already discussed about urgency and about the fact that the documents have been

I395nipC

identified in terms of the March 22nd production and the 118 pages.  In addition, we would note that we are very happy to talk about prioritization with opposing counsel but we would also ask that they continue with processing their search while we do that.

THE COURT:  Yes.  I don't think there is any reason to think that the search will stop but I don't think there is a need to put off the date but why don't you meet today, try and reach a resolution on Monday, and I am just going to ask you to send me a letter by Tuesday as to whether or not you have reached any agreement on prioritizing certain responses and then I will still anticipate getting the government's letter on Friday and plaintiff's response a week later.

MR. HAYES-DEATS:  Your Honor, respectfully, could I ask that we be allowed to submit separate letters on Tuesday?

THE COURT:  Sure.

MR. HAYES-DEATS:  It is very difficult to go back and forth with the agency.

THE COURT:  That's fine.  I don't want you to spend time on sort of coordinating things if that takes your time. That's fine with me.

MR. HAYES-DEATS:  Thank you.

MS. SEARLE:  Thank you.

THE COURT:  Then, Mr. Hayes-Deats, tell me.  I have read a lot about vacancies at different agencies including the

I395nipC

state department.  I don't have a full sense and my question is really how this is going to affect your production.  I am not sure what it is like at DHS right now or Department of Homeland Security, but you if you can let me know if you have a sense of that now or put it in your letter?

MR. HAYES-DEATS:  I think we are going to want to describe in detail the situation at each agency in our letter but is your Honor asking specifically about --

THE COURT:  I was just curious.  I'm not asking you to do any more research to give me specific numbers.  I was just trying to get a sense of is the reason this is so burdensome, from your perspective, because of the vacancies or is that just exacerbating what is already a time-consuming process?

MR. HAYES-DEATS:  So, I think there are two components to this.

So, first of all, your Honor is correct that there are vacancies including at many agencies' FOIA departments but, on the other hand, there have also been drastic increase at FOIA requests at each of the agencies that received this request. And so, the combination of those two things has created a very difficult burden on the agencies.

THE COURT:  Okay.

MR. HAYES-DEATS:  And we will explain that in more detail in the letter.

THE COURT:  That's fine.